**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROGER SOLER,** | **:** | |
| **Plaintiff/Counterclaim Defendant** | **:** | **CIVIL ACTION NO. 3:11-1232** |
| | **:** | **(JUDGE MANNION)** |
| **v.** | **:** | |
| **RAMON FERNANDEZ,** | **:** | |
| **Defendant/Counterclaim Plaintiff** | **:** | |
| | **:** | |

## MEMORANDUM

*"Friendship and money: oil and water."* Mario Puzo

No case reflects the sentiment of Mr. Puzo better than the one currently before the court. Two gentlemen, Roger Soler and Ramon Fernandez, entered into a joint business venture involving three interrelated entities: Hered, LLC, a 173,000 square foot building located in Hazleton, Pennsylvania; Heritage Food of Hazleton, LLC, which owns and operates a Shur-Save Market supermarket in a portion of the Hered building; and Terrace Plaza, LLC, which engages in the rental and management of the Hered building and its improvements. As it goes, none of the entities have been financially successful and, in fact, each has struggled significantly. Hence, the instant action wherein each party is blaming the other for the financial condition of the entities and in doing so are engaged in a most contentious battle.

Currently pending before the court are: (1) the plaintiff's motion for partial summary judgment only as to the defendant's counterclaims. (Doc. 148); and (2) the defendant's motion for summary judgment as to all claims raised in the amended complaint, as well as to all counterclaims, (Doc. 151).

## I.    PROCEDURAL HISTORY

By way of relevant background, the plaintiff filed the above-captioned matter on June 29, 2011. (Doc. 1). The defendant filed an answer with affirmative defenses and counterclaims on September 9, 2011. (Doc. 5). An amended complaint was filed on September 28, 2011. (Doc. 6). An answer to the amended complaint with affirmative defenses and counterclaims was filed on November 14, 2011. (Doc. 19).

On September 8, 2014, the plaintiff filed his motion for partial summary judgment as to the defendant's counterclaims, (Doc. 148), along with a brief in support thereof, (Doc. 149). A brief in opposition to the plaintiff's motion for partial summary judgment was filed by the defendant on September 12, 2014. (Doc. 156).

The defendant filed his motion for summary judgment also on September 8, 2014, as to all claims raised in the amended complaint, as well as to all counterclaims. (Doc. 151). The defendant's motion for summary judgment was accompanied by a statement of material facts and exhibits.

(Doc. 152, Doc. 153, Doc. 154). A brief in support of the defendant's motion for summary judgment was filed on September 12, 2014. (Doc. 155). The plaintiff filed a brief in opposition to the defendant's motion for summary judgment on September 29, 2014. (Doc. 158).

## II.    DISCUSSION

### A.    Plaintiff's Motion for Partial Summary Judgment

The plaintiff argues in his motion that he is entitled to summary judgment as to all of the defendant's counterclaims. In support of his motion, the plaintiff has included a statement of facts which spans 77 paragraphs. In a footnote preceding his statement of facts, the plaintiff provides:

> The standard of review for a summary judgment motion requires the Court to accept as true all pleaded facts raised by the opposing party as true (sic). As a result, the within statement of facts is based upon the allegations made by the Defendant. Plaintiff does not necessarily agree with all statements of fact, but is setting them forth to meet the standard of review for summary judgment. Where Plaintiff is relying upon facts not alleged by Defendant we shall note as such.

(Doc. 148, p. 3, n.3).

In fact, the standard for summary judgment is not as the plaintiff states. Instead, summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no

3

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). The court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. As to this requirement, Middle District of Pennsylvania Rules of Court, L.R. 56.1, provides that the moving party on a motion for summary judgment shall submit "a separate, short and concise statement of the material facts, in

4

numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." The moving party can discharge its burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003); see also Celotex, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." Celotex Corp., 477 U.S. at 322-23; Jakimas v. Hoffman-La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007).

Here, the plaintiff has not presented the court with an undisputed statement of material facts which demonstrates that no genuine issue of fact exists for trial. Instead, the plaintiff indicates with respect to the 77 paragraphs of facts that "[he] does not necessarily agree with all statements of fact, . . .",

5

evidencing an obvious dispute with respect to at least some, if not all, of the facts he provides. The plaintiff does not, however, specify which of the facts are disputed and which facts are undisputed. Presenting the court with 77 paragraphs of facts in support of a motion for summary judgment some of which are apparently disputed and some of which may not be is procedurally inappropriate. It is not for the court to decipher which of the facts presented are not in genuine dispute and are supported by the record. That burden rests on the moving party, in this instance the plaintiff. Given that the plaintiff has not presented an appropriate statement of undisputed material facts, the court will strike the plaintiff's statement of material facts.

Further, the purpose of the factual statements required by Local Rule 56.1 is not insignificant:

> These statements are not merely superfluous abstracts of the evidence. Rather, they are intended to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions. They are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own.

Loften v. Diolosa, 2014 WL 981596, at *4 (M.D. Pa. Mar. 13, 2014) (citing Landmesser v. Hazleton Area School District, ___ F.Supp.2d ___, 2013 WL 6002171 (M.D.Pa. Nov.12, 2013) (citations omitted). Given that the court is striking the plaintiff's statement of facts, the plaintiff's motion for partial

summary judgment will be dismissed.

## B. Defendant's Motion for Summary Judgment

The defendant seeks summary judgment on all counts of the amended complaint, as well as on all counterclaims. In support of his motion, the defendant initially argues that the factual allegations of his counterclaims and his affirmative defenses to the plaintiff's claims are deemed admitted because the plaintiff failed to respond to them. Therefore, the defendant argues that he is entitled to summary judgment on all counterclaims and claims raised in the amended complaint.

Upon review, the defendant's answer to the plaintiff's amended complaint consists of 387 paragraphs. Paragraphs 1 through 56 address the averments in the plaintiff's amended complaint; paragraphs 57 through 83 set forth the defendant's affirmative defenses; paragraphs 84 through 304 raise "new matter"; and paragraphs 305 through 387 set forth the defendant's substantive counterclaims. (Doc. 11).

In his response, the plaintiff addressed only the substantive counterclaims raised in paragraphs 305 through 387, and properly so. An affirmative defense merely provides fair notice to an adversary that there exists an issue for trial. Rule 8(c) of the Federal Rules of Civil Procedure provides that a party must merely state, not show, an affirmative defense. A

7

party served with an affirmative defense is generally not required or permitted to file any responsive pleading at all. See [Fed.R.Civ.P. 7(a)](). Therefore, the plaintiff was not required to file a response to the defendant's affirmative defenses. Moreover, as to the defendant's paragraphs 84 through 304, "new matter" is not a proper pleading under the Federal Rules of Civil Procedure.[1] Therefore, the plaintiff was not required to provide responses to the averments set forth in those paragraphs either. Given that the plaintiff was not required to provide responses to the defendant's affirmative defenses or his "new matter", the defendant's motion for summary judgment on this basis will be denied.

In the alternative, the defendant argues that he is entitled to summary judgment on the merits of the claims raised in the plaintiff's amended complaint, as well as on his own counterclaims. In so arguing, the defendant has provided the court with a statement of material facts the following of which are not in dispute.

Heritage Food of Hazleton, LLC, ("Heritage"), is a Pennsylvania limited liability company which was formed on August 25, 2008, with its principal

---

[1]Rule 7 provides:

"There shall be a complaint and an answer; a reply to a counterclaim ..; an answer to a cross-claim . . .; a third-party complaint . . ., and a third-party answer . . . No other pleading shall be allowed . . ."

place of business and registered office at 601 South Poplar Street, Hazleton, Pennsylvania. Heritage's business purpose is the ownership and operation of a supermarket located at 601 South Poplar Street, Hazleton, Pennsylvania, known as Heritage Shur-Save Market.[2]

On August 28, 2008, Roger Soler and Ramon Fernandez executed an Operating Agreement for Heritage. A second agreement was executed on April 22, 2010, which reflected the ownership interest in Heritage as: Roger Soler - 30% and Ramon Fernandez - 70%.

Hered, LLC, ("Hered"), is a Pennsylvania limited liability company which was formed on March 16, 1998, with its principal place of business and registered office at 601 South Poplar Street, Hazleton, Pennsylvania. Hered's business purpose is the ownership of the land and improvements located at 601 South Poplar Street, Hazleton, Pennsylvania, formerly known as the Pocono Market Fair and currently known as Terrace Plaza.

On June 6, 2008, Roger Soler and Ramon Fernandez executed an Operating Agreement for Hered. This agreement was modified by an

---

[2]Although plaintiff indicates in his response to the defendant's statement of facts that this fact is "denied" and that Heritage was "created for other purposes," contrary to L.R. 56.1, the plaintiff has failed to provide any citation to record evidence to support his assertion. In fact, the plaintiff has done this with respect to a number of the defendant's statements of fact. Where this is the case, in accordance with L.R. 56.1, the court will deem the defendant's facts admitted.

additional agreement dated September 21, 2009, and further modified by an additional agreement dated April 22, 2010. As part of the April 22, 2010, agreement, the ownership interest in Hered was modified as follows: Roger Soler - 19.97% and Ramon Fernandez - 80.03%. Roger Soler is the only signer on Hered, LLC's account (ending in 118) with First Heritage Bank now doing business as First Liberty Bank and Trust.

Terrace Plaza, LLC, ("Terrace"), is a Pennsylvania limited liability company which was formed June 9, 2008, with its principal place of business and registered office at 601 South Poplar Street, Hazleton, Pennsylvania. Terrace's business purpose is the rental and management of the improvements located at 601 South Poplar Street, Hazleton, Pennsylvania, which are owned by Hered. On June 6, 2008, Roger Soler and Ramon Fernandez executed an agreement which included a provision for the creation of Terrace.

Roger Soler was a signer on Kountry Kitchen, LLC's general account (ending in 32965) with First National Community Bank. He was also a signer on Kountry Kitchen, LLC's payroll/general fund account (ending in 32981) with First National Community Bank.

Roger Soler was a signer on MaxxFun, LLC's general fund account (ending in 32601) with First National Community Bank. He was also a principal in MaxxFun, LLC. The parent-holding company of MaxxFun, LLC,

was FSOP, LLC. Roger Soler is the sole owner of FSOP, LLC. Roger Soler is the only signer on FSOP, LLC's general account (ending in 32643) with First National Community Bank. Roger Soler lent money, individually and through FSOP, LLC, to Kountry Kitchen, LLC, and MaxxFun, LLC. Roger Soler signed guarantees for MaxxFun, LLC, and/or Kountry Kitchen, LLC, but did not disclose that fact to Ramon Fernandez.

Roger Soler maintained a personal account (ending in 06175) with First National Community Bank. He also maintained a personal account (ending in 1536) with Community Bank d/b/a First Liberty Bank & Trust, as well as a personal account (ending in 5716) with Bank of America.

On September 24, 2010, Roger Soler contacted Penn National Mutual Casualty Insurance Company, ("Penn National"), to file a claim regarding an insurable loss to the real property owned by Hered, LLC, under policy number CX 90662317. He submitted a claim for wind damage at 601 South Poplar Street, after which he received insurance check number 1900110820 from Penn National in the amount of $65,577.23. This check was made payable to Hered, LLC, and Landmark Bank and was endorsed by Terence Malloy for Landmark Bank and Roger Soler for Hered, LLC. Roger Soler deposited the check from Penn National into Hered's account ending in 1185 at Community Bank d/b/a First Liberty Bank & Trust on January 31, 2011. After depositing the check, Roger Soler initiated the following transactions out of that same

11

account claiming the same as his payroll:

a)      a wire of $24,000 on February 2, 2011, to Bank of America to account ending in 5716 owned by Roger Soler;

b)      an internal transfer on February 2, 2011, within First Liberty Bank & Trust of $39,000 to an account owned by Roger Soler; and

c)      an internal transfer on February 2, 2011, within First Liberty Bank & Trust of $2,000 to an account owned by Roger Soler.

Roger Soler opened a new account at First National Community Bank (ending in 32973) on March 30, 2011. At this time, he was not the managing member of Heritage. As part of opening this account, Roger Soler represented to the bank that he had the authority and consent to open the account after a meeting of the members. Roger Soler acknowledged opening this account because the other account was frozen by the Internal Revenue Service, ("IRS").

On July 6, 2011, Roger Soler initiated a transfer in the amount of $35,000 from Heritage Food of Hazleton, LLC's account (ending in 1006) at Landmark Community Bank to his personal bank account (ending in 6154) at Landmark Community Bank. That same day, he directed the staff at the Pittston branch of Landmark Community Bank to wire $32,000 out of his Landmark Community Bank account to his Bank of America account (ending in 5751). He went on to direct the staff at the Pittston branch of Landmark

12

Community Bank to cash a check in the amount o $3,000 which was made payable to "cash."

Joseph Sheaman d/b/a J&J Drywall was a general contractor, who had all the necessary permits to do work on the expansion of Hered. He received approximately $900,000 from May 2010 through December 2010 from Ramon Fernandez, who would pay Joseph Sheaman by wiring money directly from Fernandez's account into Sheaman's business account.

Donna Petrosky was responsible for payroll and acted as the in-house bookkeeper for Hered and Heritage beginning in September of 2009. In the beginning of 2010, in addition to her other duties, Ms. Petrosky began to manage Heritage's supermarket for the evening hours and some weekends. In approximately April 2010, Ms. Petrosky began managing Heritage's supermarket on a more full time basis including the ability to hire and fire people.

Prior to Ms. Petrosky becoming the manager of Heritage's supermarket in 2010, Heritage did not have sufficient income to pay their bills. During Ms. Petrosky's tenure, Heritage did not pay rent to Terrace because Heritage did not have the money. In addition, Ms. Petrosky testified that Heritage was behind on federal withholding, social security, state, local, unemployment and sales taxes because they did not have any money. Ms. Petrosky testified that Heritage had difficulty paying its food vendor, AWI, because it had no money.

13

The companies were also delinquent with a number of creditors until Ramon Fernandez funded the companies. Despite their delinquencies, Ms. Petrosky testified that she had not seen any lawsuits filed against any of the entities or parties.

Ms. Petrosky testified that the requests to Ramon Fernandez for capital to fund the entities were done on a week-to-week basis for the supermarket. With the exception of Joe Sheaman, Donna Petrosky was not aware of construction contractors, subcontractors or vendors that were asking for payments that they did not receive. Donna Petrosky testified that Joe Sheaman was the main contractor with "everything [running] through him."

According to Ms. Petrosky, Roger Soler made decisions to advertise and buy products rather than pay taxes. Moreover, she testified that when rental income was received by Terrace, some of it would go into Terrace Plaza and some of it would be kept by Roger Soler.

Roger Soler testified: "my fiduciary duty is that if I see something which is fraudulent or not right, I am certainly not going to be part of it."

On the above facts, the defendant argues that he is entitled to summary judgment as to the claims raised in the plaintiff's amended complaint, Count I - Breach of Fiduciary Duty; Count II - Breach of Contract; Count III - Anticipatory Breach of Contract; Count IV - Claim for Declaratory Relief; Count V - Misappropriation of Funds; Count VI - Commingling of Funds; and

Count VII - Violation of the Pennsylvania Wage Payment and Collection Law. He also argues that the facts establish that he is entitled to summary judgment on all of his counterclaims: Count I - Breach of Contract; Count II - Unjust Enrichment; Count III - Breach of Fiduciary Duty; Count IV - Conversion; Count V - Fraud; Count VI - Misappropriation; Count VII - Order of Dissolution and/or Receivership; and Count VIII - violation of the Pennsylvania Wage Payment and Collection Law. The facts provided, however, do not establish the defendant's entitlement to summary judgment as to any of these claims.

Initially, the defendant argues that the doctrine of unclean hands prohibits the plaintiff's equitable claims for relief in Counts I (Breach of Fiduciary Responsibility), III (Anticipatory Breach of Contract), and IV (Declaratory Judgment). The doctrine of unclean hands is based on the theory that those who come to a court of equity must do so with clean hands. Lee v. Lee, 978 A.2d 380, 387 (Pa. Super. Ct.2009) (quoting Shenango Valley Osteopathic Hosp. v. Dep't of Health, 451 A.2d 434, 440 (Pa. 1982). "The doctrine of unclean hands requires that one seeking equity act fairly and without fraud or deceit as to the controversy at issue." Id. (quoting Shenango Valley Osteopathic Hosp., 451 A.2d at 440).

"[W]henever a party who seeks to set the judicial machinery in motion and obtain some equitable remedy has violated conscience or good faith, or

15

other equitable principle in his prior conduct with reference to the subject in issue, the doors of equity will be shut against him notwithstanding the defendant's conduct has been such that in the absence of circumstances supporting the application of the maxim, equity might have awarded relief. See Deweese v. Reinhard, 165 U.S. 386, 390 (1897) ("A court of equity acts only when and as conscience commands, and if the conduct of the plaintiff be offensive to the dictates of natural justice, then, whatever may be the rights he possesses and whatever use he may make of them in a court of law, he will be held remediless in a court of equity."). The United States Supreme Court has emphasized that the unclean-hands defense is a narrow one, predicated upon a plaintiff's inequitable conduct which is related to matters involved in the suit. Keystone Co. v. Excavator Co., 290 U.S. 240, 245 (1933); see also Codex Corp. v. Milgo Electronic Corp., 717 F.2d 622, 632 (1st Cir.1983), *cert. denied*, 466 U.S. 931(1984); Eristavi-Tchitcherine v. Lasser, 64 F.2d 144, 145-46 (5th Cir. 1947).

Here, the statement of facts set forth above does not demonstrate that there are no material issues of fact with respect to whether Roger Soler acted deceitfully or fraudulently in relation to the claims raised in his complaint. The unclean hands issue simply cannot be resolved on a summary judgment by way of the instant motion.

In the alternative, with the exception of Counts III (Anticipatory Breach

of Contract) and IV (Claim for Declaratory Relief), the defendant argues that he is entitled to summary judgment on the merits of the plaintiff's claims. In order to establish breach of fiduciary duty (plaintiff's Count I) under Pennsylvania law, "a plaintiff must demonstrate that a fiduciary relationship exists between the parties and that the defendant breached its fiduciary duty by failing to act for the benefit of the partnership, and instead, acted in a manner to promote his individual interests." Rahemtulla v. Hassam, 539 F. Supp. 2d 755, 778 (M.D. Pa. 2008) (citing CH & H Pa. Props., Inc. v. Heffernan, 2003 WL 22006799 (E.D.Pa. Aug. 20, 2003)).

Here, while it is clear that the parties shared a fiduciary relationship in their partnership, the facts of record demonstrate that there are material issues of fact as to whether either party breached that duty, with each party arguing that he acted properly at all times.[3] Summary judgment is therefore not appropriate as to the breach of fiduciary claim.

On the plaintiff's breach of contract claim (Count II), the defendant argues that the main contract in question is the written agreement between the parties dated April 22, 2010. The plaintiff alleges that the defendant breached the agreement in several ways, including by:

---

[3]Defendant has a counterclaim for breach of fiduciary duty against the plaintiff. For the same reasons set forth regarding plaintiff's claim, summary judgment will be denied on the defendant's counterclaim.

(1)    refusing to pay the $329,000 of creditors debt owed pursuant to the Partnership Agreement;

(2)    stopping payment to Soler of his weekly salary, expenses, and benefits;

(3)    failing to support Heritage Food working capital;

(4)    failing to timely pay taxes and other bills;

(5)    failing to invest necessary capital to complete the construction of the property; and

(6)    failing to comply with the obligations imposed upon Hered, Heritage, and/or Mr. Fernandez pursuant to various leases and contracts between Hered and third parties.

To establish a breach of contract under Pennsylvania law, a party must demonstrate: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract, and; (3) damages. See Amitia v. Nationwide Mut. Ins. Co., 2009 WL 111578 (M.D.Pa. Jan.15, 2009) (citing Ware v. Rodate Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003)).

Again, while there is no dispute that the parties were subject to various written agreements, the facts provided by the defendant simply do not demonstrate that there is no genuine issue of fact for trial on which agreement was controlling, or whether there was a breach or any resulting damages. Summary judgment will therefore be denied as to this claim as well.

With respect to the plaintiff's misappropriation claim (Count V), this court first defined misappropriation as "[t]he application of another's property or money dishonestly to one's own use." Westport Ins. Corp. v. Hanft & Knight, P.C., 523 F.Supp.2d 444, 460 (M.D.Pa. 2007) (citing Black's Law Dictionary (8th ed. 2004)). The tort of misappropriation was then described as having

18

three elements: "(1) the plaintiff has made a substantial investment of time, effort and money into creating the thing misappropriated such that the court can characterize that 'thing' as a kind of property right"; (2) the defendant "has appropriated the 'thing' at little or no cost, such that the court can characterize defendant's actions as 'reaping where it has not sown'"; and (3) the defendant "has injured plaintiff by the misappropriation." Id. at 459–60 (quoting Sorbee Int'l Ltd. v. Chubb Custom Ins. Co., 735 A.2d 712, 716 (Pa.Super.Ct.1999)).

As the moving party, the defendant has failed to set forth a sufficient showing of undisputed facts on any of the above elements to demonstrate that he is entitled to summary judgment on the plaintiff's misappropriation claim. Summary judgment will therefore be denied as to this claim as well.

As to the plaintiff's claim of commingling of funds (Count VI), the defendant argues that no separate cause of action has been recognized in Pennsylvania for this claim and that the concept of commingling of funds is included in the general theory of breach of fiduciary duty. Indeed, in the court's research, no such separate cause of action has been identified under Pennsylvania law. In response to the defendant's argument, the plaintiff does not indicate that such a cause of action exists and, in fact, alleges in his amended complaint that "comingling (sic) of assets is in breach of Mr. Fernadez's fiduciary duty to Mr. Soler, Heritage, and Hered." The plaintiff argues that his establishment that the defendant has made illegal deposits in

the accounts of Hered, Heritage and Terrace exposes the plaintiff to tax consequences and possible criminal charges and, as such, the cause of actions should be permitted to proceed. However, whether the information comes into the case through a breach of fiduciary duty claim or through a separate claim of commingling of funds, the potential repercussions are the same. Since the court finds that the commingling of funds claim is more appropriately subsumed under the breach of fiduciary duty claim, the separate cause of action in Count VI will be stricken and the allegations contained in this count will be considered in relation to the breach of fiduciary duty claim.

Finally, in his amended complaint, the plaintiff brings a claim under the Pennsylvania Wage Payment and Collection Law, ("WPCL"), (Count VII). The defendant argues that he is entitled to summary judgment on this claim because only an employee, not a partner, can recover under the WPCL. Because the plaintiff was a partner in the companies owned by the parties, the defendant argues that the plaintiff cannot seek relief under the WPCL[4].

The WPCL states, in pertinent part:

(a) Wages other than fringe benefits and wage supplements. Every employer shall pay all wages, other than fringe benefits and supplements, due to his employe[e]s on regular paydays

_____

[4]Interestingly enough, although the defendant makes this argument with respect to the plaintiff's claim under the WPCL, the defendant who was a partner in the entities himself brings a counterclaim under the WPCL against the plaintiff for damages.

designated in advance by the employer . . . The wages shall be paid in lawful money of the United States or check, except that deductions provided by the law, or as authorized by regulation of the Department of Labor and Industry for the convenience of the employe[e], may be made including deductions of contributions to employe[e] benefits plans, which are subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq.

43 P.S. §260.3.2 The purpose of the WPCL has been explained by the Pennsylvania Superior Court as follows:

Pennsylvania enacted the WPCL to provide a vehicle for employees to enforce payment of their wages and compensation held by their employers. The underlying purpose of the WPCL is to remove some of the obstacles employees face in litigation by providing them with a statutory remedy when an employer breaches its contractual obligation to pay wages. The WPCL does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement.

Thomas Jefferson Univ. v. Wapner, 903 A.2d 565, 574 (Pa.Super.Ct. 2006) (citing Hartman v. Baker, 766 A.2d 347, 352 (Pa.Super.Ct. 2000)).

In this case, the plaintiff argues that, although he was a member of Hered, Terrace and Heritage, he was also entitled to wages as an employee by way of contract. As such, he argues that he is entitled to payment of wages due for the work he performed as an employee under the WPCL. The statement of facts provided by the defendant does not establish that there are no material issues of fact with respect to this claim. Therefore, the court will not grant summary judgment as to the plaintiff's WPCL claim.

The defendant further argues that the record has been sufficiently developed to leave no remaining issues of material fact as to his counterclaims. As for the defendant's breach of contract claim, the defendant relies upon facts which are outright disputed by the plaintiff. As such, there are material issues of fact which preclude summary judgment on this counterclaim.

On the breach of fiduciary duty claim, the defendant relies upon the same unclean hands argument, which was rejected above. As such, summary judgment will not be granted on this counterclaim either.

Defendant groups his counterclaims of conversion, fraud and unjust enrichment together in his request for summary judgment. In doing so, the defendant notes that on a claim of unjust enrichment, the following must be established: (1) plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) acceptance and retention by he defendant of the benefits under circumstances which would make it inequitable for the defendant to retain the benefit without paying for the value of the benefit. Com. Ex. Rel. Pappert v. TAP Pharm. Prods., Inc., 885 A.2d 1127 (Pa. Cmwlth. 2005).

Further, the defendant notes that conversion is "the deprivation of another's right of property in, or use or possession of, a chattel without the owner's consent and without lawful justification." Chrysler Credit Corp. v.

B.J.M., Jr., Inc., 834 F.Supp.813 (E.D.Pa. 1993). The defendant notes that the plaintiff may bring a conversion claim "if he or she had either actual or constructive possession or an immediate right to possession of the chattel at the time of the conversion." Id.

Finally, the defendant states that the elements of fraud consist of "1) a misrepresentation; 2) a fraudulent utterance of it; 3) the maker's intent that the recipient be induced thereby to act; 4) the recipient's justifiable reliance on the misrepresentation; and 5) damage to the recipient proximately caused." Seven v. Kelshaw, 611 A.2d 1232 (Pa. Super. 1992) (citing Lokay v. Lehigh Valley Co-op Farmers, Inc., 492 A.2d 405 (Pa. Super. 1985)).

In one paragraph, the defendant argues that he has sufficiently demonstrated that no material issue of fact exists as to any of the above counterclaims and that he is entitled to summary judgment as a matter of law on these counterclaims. To the contrary, as discussed above as to some of the other claims, significant issues of material fact exist as to whether the defendant is entitled to summary judgment on any of these claims. Therefore, summary judgment will be denied as to the defendant's counterclaims of conversion, fraud and unjust enrichment.

In addition, the court will not grant summary judgment on the counterclaim of misappropriation. Here, the defendant simply argues that "[p]laintiff has appropriated the items set forth in the counterclaim 'at little or

23

no cost' and [p]laintiff has been 'reaping where it has not sown.'" Again, issues of material fact exists as to this claim and the court will not grant summary judgment based upon the disputed facts before it.

As noted and for the reasons set forth above, there are material issues of fact with respect to the defendant's WPCL claim. Summary judgment will therefore be denied as to this counterclaim.

With respect to the defendant's request for court-supervised dissolution and/or receivership, a federal court sitting in equity may appoint a receiver where there has been "gross fraud and mismanagement on the part of the directors and controlling shareholders involving a breach on their part of the fiduciary or quasi-fiduciary duty . . ." Cowin v. Bressler, 1981 WL 1720, at *2 (D.D.C. Dec. 23, 1981) (citing Campbell v. Pennsylvania Industries, Inc., 99 F. Supp. 199, 205 (D. Del. 1951)). However, a court-ordered dissolution is a drastic remedy and the power to do so must "always be exercised with great restraint." Id. (quoting Hall v. John S. Isaacs & Sons Farms, Inc., 163 A.2d 288, 293 (Del. 1960). Only where the misconduct is current and the danger of loss is imminent will such a remedy be utilized. Id. (citing Campbell, supra at 205; Lichens Co. v. Standard Commercial Tobacco Co., Inc., 40 A.2d 447, 452 (Del. Ch. 1944)).

Here, the plaintiff has not substantively responded to the defendant's request for court-supervised dissolution and/or receivership. However, as is

obvious from the discussion above, material issues of fact exist in all aspects of this case which would render any ruling on the defendant's request for court-supervised dissolution and/or receivership inappropriate at this time. Therefore, the defendant's motion for summary judgment will be denied with respect to this counterclaim.

Finally, the defendant argues in his motion for summary judgment that the plaintiff lacks standing to bring the claims raised in his amended complaint because the plaintiff must show direct personal injury and the plaintiff has only shown injury to the entities. The court finds that there are questions of fact as to whether the plaintiff can demonstrate injury which is direct and personal to him and does not necessarily flow through the entities. He is alleging damages for harm which he has personally incurred and which allegedly does not directly impact the entities. As such, the defendant's motion for summary judgment will be denied on this basis as well.

An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Date: September 29, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2011 MEMORANDA\11-1232-01.wpd


25