UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROGER SOLER, | |
| Plaintiff, | CIVIL ACTION NO. 3:11-cv-01232 |
| v. | (SAPORITO, M.J.) |
| RAMON FERNANDEZ | |
| Defendant. | |

## **MEMORANDUM**

This protracted matter is before the court on a motion to vacate, modify, or correct award of arbitration panel filed by the defendant, Ramon Fernandez. (Doc. 189). The parties have consented to proceed before the undersigned pursuant to 28 U.S.C. § 636(c). The matter arises out of a long-standing dispute between the parties as it relates to their respective ownership interests in three entities: Hered, LLC, Heritage Food of Hazleton, LLC, and Terrace Plaza, LLC. The parties agreed to submit their dispute to a panel of arbitrators. The panel entered its majority decision on or about May 19, 2022, and served it upon counsel for the parties on May 25, 2022. The instant motion followed on June 24, 2022.

1

Although the defendant's motion is titled as a motion to vacate, correct, or modify, the defendant's submissions reflect that he is seeking to *vacate* the award on the basis that the panel allegedly exceeded its power and caused prejudice to the defendant by: (1) issuing its award 1,776 days after the close of the evidence; (2) considering extraneous evidence of a real estate appraisal more than 1,500 days after the close of the evidence; and (3) failing to address all of the claims of the parties.

The plaintiff, Roger Soler, contends that the panel addressed all the claims submitted to it, and the other two grounds the defendant cites were waived. The parties have briefed the motion and it is ripe for disposition. (Doc. 190; Doc. 191). For the reasons set forth herein, we will deny the motion.

## I. *Statement of Facts*

The underlying facts of the case are not relevant to the disposition of the defendant's motion. Suffice it to say that the dispute began because of allegations of breaches of the agreements regarding the parties' relationship to the three entities in which they claim ownership interests and their obligations to each other and the entities.

This action was originally assigned to the Honorable Malachy E. Mannion and it was subsequently reassigned to the undersigned upon consent of the parties. (Doc. 178). The dispute that brings the instant motion before us relates to a January 5, 2017, agreement to arbitrate the dispute, before a panel of arbitrators and the panel's subsequent issuance of its award. While the matter was before the undersigned for a settlement conference on July 11, 2016, the parties agreed to litigate the dispute before a panel of arbitrators consisting of three lawyers. The parties' arbitration agreement followed. (Doc. 189-1). Our last involvement in the case was on February 9, 2017, where we appointed the third arbitrator, as the parties and the appointed arbitrators were unable to agree upon the appointment of the third arbitrator. (Doc. 188). Thereafter, the instant motion was docketed on June 24, 2022.

The motion alleges that the arbitration proceedings occurred over the course of several dates and the record was closed on July 13, 2017. (Doc. 189 ¶6). It also alleges that the panel issued a two-to-one decision on May 25, 2022—a period of 1,776 days from the close of the evidence; the panel failed to rule on the fourteen individual claims advanced by the

parties; and it considered extraneous evidence in the form of a real estate appraisal more than 1,500 days after the close of the record. (*Id.* ¶¶7-8).

The arbitration agreement set forth the terms of the arbitration, and that it is "a binding, non-appealable Pennsylvania common law arbitration." (Doc. 189-1, at 3). It was further agreed that all powers of the arbitrators "shall be exercised by a majority of the arbitrators." (*Id.* at 4). The agreement also required that written notice of the final and binding arbitration award shall be emailed and mailed by certified mail to each of the parties and their counsel "not later than seven (7) days after the conclusion of the hearing." (*Id.* at 5). Further, the parties agreed that the provisions of their agreement are a complete defense to any future suit with respect to any controversy covered by the arbitration agreement. (*Id.*).

On May 19, 2022, a majority of the arbitrators entered the following final arbitration award, which is set out, in pertinent part, as follows:

> NOW, this Arbitration Panel HEREBY RENDERS THIS FINAL ARBITRATION AWARD in full settlement of all remaining claims and counterclaims submitted to this Arbitration which were not addressed by the Escrow Agreement:
>
> Defendant [,] Ramon Fernandez[,] is liable for and shall pay to Plaintiff Roger Soler[,] Seven

> Hundred Twenty-Five Thousand ($725,000) Dollars within 30 days of the date of this AWARD. Plaintiff [,] Roger Soler [,] shall relinquish his complete ownership interest in all entities and businesses which he owns with the Defendant upon receipt of the payment as set forth herein.

(Doc. 189-1, at 19).

The plaintiff has submitted a declaration of Timothy P. Polishan, counsel for the plaintiff, setting forth factual assertions. (Doc. 191-1). The parties have further fleshed out their respective positions in their briefs.

## II. Legal Standard

As an initial matter, the parties have not expressed that Pennsylvania law applies to vacatur standards as to whether the arbitration award should be vacated. The parties must "express a 'clear intent' to apply state law vacatur standards" in lieu of the standards in the Federal Arbitration Act. *Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 293 (3d Cir. 2010). Despite the parties' agreement that the arbitration is a Pennsylvania common law arbitration, the agreement is silent as to whether Pennsylvania law should apply to vacatur standards. Further, in their submissions, the parties acknowledged that the standard which we are

5

to employ is set forth in the FAA.  9 U.S.C. § 10(a); (Doc. 190, at 7; Doc. 191, at 8).  The FAA provides as follows:

> **(a)** In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> **(1)** where the award was procured by corruption, fraud, or undue means;
>
> **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;
>
> **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> **(b)** If an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a).

Under Section 10(a)(4), a court may vacate an award only where the arbitrators have acted "outside the scope of [their] contractually delegated authority" by issuing a decision that reflects their own notions of "economic justice" instead of drawing "its essence from the contract." *Oxford Health Plans, LLC v. Sutter*, 569 U.S. 564, 569 (2013) (cleaned up). When applying Section 10(a)(4), it is not the proper role of the court to "sit as the arbitrators did and reexamine the evidence under the guise of determining whether the arbitrators exceeded their powers." *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989). A party seeking relief therefore "bears a heavy burden" to show the award must be overturned. *Oxford Health Plans*, 569 U.S. at 569. The weight of that burden requires a party to do more than show the arbitrators "committed an error—or even a serious error." *Id.* (cleaned up). That is so because the parties "bargained for the arbitrator's construction of their agreement" and must live with "an arbitral decision even arguably construing or applying the contract" regardless of how the court views it. *Id.* (citation omitted). Thus, "the sole question for [the court] is whether the arbitrator[s] (even arguably)

7

interpreted the parties' contract, not whether [they] got its meaning right or wrong." *Id.*

## III. Discussion

The defendant seeks vacatur pursuant to Section 10(a)(4)'s "exceeding powers" provision, which allows a court to vacate an arbitration award "where the arbitrators exceeded their powers."

We begin our analysis with an observation from our sister court in the Eastern District:

> Arbitration retains its appeal as an alternative to litigation only if the parties involved can rely on the arbitrators' decision. In other words, a reasonable person would surely hesitate to arbitrate a dispute in the first place knowing that he or she may very well have to litigate or re-arbitrate the same dispute again. Therefore, courts worry about disenchanted arbitration losers improperly seeking a second bite at the apple, which would undermine the finality of arbitration awards (and thus arbitration itself).

*Stone v. Bear, Sterns & Company, Inc.*, 872 F. Supp. 2d 435, 454 (E.D. Pa. 2012).

### 1. Timeliness of award

The arbitration agreement provides in pertinent part that "written notice of the arbitration award shall be both emailed, and mailed by

certified mail, to each of the parties and their counsel . . . not later than seven (7) days after the conclusion of the hearing." (Doc. 189-1, at 5). It is undisputed that there was more than one hearing conducted by the panel. Because the arbitration award here allegedly was issued 1,776 days after the last hearing—July 13, 2017, the defendant argues that the untimely award must be vacated. However, the defendant does not appear to rely upon the time frame set forth in the agreement as part of his grounds for vacatur. The plaintiff contends that additional testimony and exhibits were presented to the panel in August 2017. (Doc. 191, at 19). Further, the plaintiff maintains that as late as April 2022, shortly before the issuance of the arbitration award, counsel for the parties continued to jointly email the arbitrators their arguments, stipulations, and additional evidence. (*Id.*; Doc. 191-1 ¶12). In addition, counsel for the plaintiff, in his declaration, states that in the years following the last evidence submission by hearing in August 2017, the parties and their counsel participated in "ongoing alternative dispute resolution activities," including in-person and telephonic conferences, emails, correspondence through the United States mail, settlement negotiations, stipulations of issues and facts for the benefit of the panel, and work

regarding the parties' escrow agreement. (Doc. 191-1 ¶14). During this period, Attorney Polishan stated in his declaration that on various occasions, the defendant sought extensions of time from the panel for various reasons. (*Id.* ¶15).

The defendant has not relied upon the arbitration agreement to support his position. The record before us does not demonstrate that the defendant objected to any delay by the panel in the rendition of its award. Nor did the defendant involve the court to address any delay in the adjudication of the issues before the panel.

Because "private settlement of a dispute is one of the most desired federal goals," "[post award] technical objections by a losing party as a means of avoiding an adverse arbitration decision" are disfavored. *West Rock Lodge No. 2120, International Association of Machinists and Aerospace Workers, AFL–CIO v. Geometric Tool Company,* 406 F.2d 284, 286 (2d Cir.1968). Thus, in *West Rock Lodge,* the Second Circuit held that "any limitation upon time in which an arbitrator can render his award [is] directory limitation, not a mandatory one, and that it should always be within a court's discretion to uphold a late award if no objection to the delay has been made prior to the rendition of the award or there is

10

no showing that actual harm to the losing party was caused by the delay." *Id.* at 286. As the defendant has made no showing that he objected to the delay prior to the issuance of the award, nor of actual harm stemming from the delay, there is no basis to set aside the arbitration award on the issue of the delay in the panel's rendition of its majority decision.[1]

We are not persuaded by the defendant's argument that the lack of detail in the award and the alleged failure to address the ten claims at issue result in questions about due process and the truth-finding process. (Doc. 190, at 9). We see no reason to expand upon the well-settled law that arbitrators have no obligation to provide reasons to the court for an

---

[1] *See American Federation of State, County and Mun. Employees v. City of New Britain,* 538 A.2d 1022 (Conn. 1988) (holding that "the plaintiffs' failure to raise the issue of timeliness prior to the issuance of the arbitration award operates as a waiver of their right to assert the lack of timeliness in the board's decision;" and noting that "[w]e have previously concluded that the time limitation in this statute's predecessor was directory and not mandatory," and that "[i]n the absence of a mandatory time limitation [in either the collective bargaining agreement or the submission to the arbitrators], an award of arbitrators may be made within a reasonable time.") (citations and internal quotation marks omitted); *Jones v. St. Louis-San Francisco Ry. Co.,* 758 F.2d 257, 265-66 (6th Cir. 1984) ("a court should always have the discretion to uphold a late award when no objection to the delay has been made prior to the rendition of the award or there is no showing that harm was caused by the delay.").

11

award. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.* 363 U.S. 593, 598 (1960).

### *2. The panel's consideration of new appraisal after close of evidence.*

The defendant argues that in January 2022, the plaintiff submitted to the panel for its consideration a new appraisal from a different expert containing an increased value of the building at issue. Further, the defendant asserts that the record should have been reopened upon motion, providing the defendant with an opportunity to cross-examine the plaintiff's new expert. The record before us does not reflect whether either side moved the panel to reopen the record. Thus, we are not persuaded by this argument.

The record before us is silent as to whether the defendant objected to the submission of the new appraisal. Rather, the defendant concedes that he was asked by the panel to propose a settlement offer *based upon* the building's new valuation. In response to this request, the defendant "offered a tiered settlement based upon the actual sale price of the building." (*Id.* at 10-11). The defendant acknowledges that a majority of the panel rejected that proposal. The defendant could have asked the panel to permit him to cross-examine the new expert or to submit a new

12

appraisal from the expert of his choice. He chose neither option. The arbitration agreement provided that the parties agreed that expert reports may be submitted to the arbitrators as evidence in lieu of testimony by the expert who authored the report. (Doc. 189-1, at 8). More importantly, the defendant has not submitted any evidence that the panel, in fact, relied upon the January 2022 appraisal in making its decision.

Nonetheless, if a party could have reasonably discovered any type of malfeasance before the issuance of the award, he should be precluded from challenging the subsequent award on those grounds. *Goldman Sachs & Co. v. Athena Venture Partners, L.P.*, 803 F. 3d 144, 149 (3d Cir. 2015) (waiver applies in the arbitration context when a party has constructive knowledge of an arbitrator's potential misconduct but fails to timely object). The Third Circuit, in *Goldman* Sachs, observed that: "A party should not be permitted to game the system by rolling the dice on whether to raise the challenge during the proceedings or wait until it loses to seek vacatur on the issue." *Id*. at 150. Thus, we find that the defendant did not prove that the panel relied upon the new appraisal in its award. Moreover, the defendant waived his right to challenge the new

expert on cross-examination or the panel's consideration of the new appraisal.

### *3. The panel addressed all claims of the parties.*

In his third and final basis to vacate the arbitration award, the defendant contends that the panel exceeded its power and prejudiced the defendant by failing to address all claims. In support of this ground for vacatur, the defendant contends that the panel was provided multiple "verdict sheets" which specifically set forth the ten separate claims. Further, he relies upon a provision in the arbitration agreement which permitted the defendant to assert and attempt to prove his counterclaims alleged in this court before the arbitration panel. (Doc. 190, at 11). These contentions are meritless. The arbitration panel was free to use a proposed verdict sheet or to submit its award on its own form, as it did. The panel titled its document "Final Arbitration Award." (Doc. 189-1, at 19). In addition, the award reflects that the panel considered all remaining claims and *counterclaims*. (*Id.*)

Based upon the foregoing analysis, we find that the arbitration panel did not exceed its powers, and we will deny the defendant's motion.

An appropriate order follows.

Dated: November 28, 2022                    ***s/Joseph F. Saporito, Jr.***
                                                                 JOSEPH F. SAPORITO, JR.
                                                                 United States Magistrate Judge