UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

ROGER SOLER,

    Plaintiff,

v.

RAMON FERNANDEZ,

    Defendant.

CIVIL ACTION NO. 3:11-cv-01232

(SAPORITO, C.M.J.)

## MEMORANDUM

    This federal diversity action was initiated in June 2011. It concerns a joint business venture between plaintiff Roger Soler and defendant Ramon Fernandez, concerning three interrelated business entities: Hered, LLC, which owns a 173,000 square-foot building located in Hazleton, Pennsylvania; Heritage Food of Hazleton, LLC, which owns and operates a Sure-Save Market supermarket in a portion of the Hered building; and Terrace Plaza, LLC, which engaged in the rental and management of the Hered building and its improvements.

    In his amended complaint, Soler asserted state-law claims against Fernandez for breach of fiduciary duty, breach of contract, misappropriation of funds, and unpaid wages. Fernandez answered the amended complaint, raised various affirmative defenses, and asserted

his own state-law counterclaims against Soler for breach of contract, unjust enrichment, breach of fiduciary duty, conversion, fraud, misappropriation, and unpaid wages, as well as for an order of dissolution or receivership of the three jointly owned business entities.

After the court denied or dismissed cross-motions for summary judgment,[1] the case was set down for trial. The parties then agreed to engage in a settlement conference before the undersigned United States magistrate judge, and as a result of that conference,[2] the parties agreed to dismiss the action and take their claims to arbitration.

The arbitration took place over the course of several dates, with the record being closed in July 2017. Nearly five years later—on May 25, 2022—the arbitration panel issued a 2-1 split decision on the parties' claims. The arbitration panel found Fernandez liable and directed him to

---

[1] *See generally Soler v. Fernandez*, No. 11-1232, 2015 WL 5771929 (M.D. Pa. Sept. 29, 2015), Doc. 159.
[2] Settlement talks actually stretched out over a period of several months and several different sessions between July 2016 and February 2017. The parties agreed in principle to take the case to arbitration at the first session, but several additional sessions were necessary to iron out the details of their agreement to arbitrate, including the selection of a third arbitrator (on a panel of three arbitrators), who was ultimately appointed by the court at the request of the parties because they had been unable to reach any agreement on this selection.

pay Soler $725,000 in exchange for Soler's ownership interest in the three business entities he jointly owned with Fernandez.

On June 24, 2022, this action was reopened when Fernandez filed a motion to vacate the arbitration award. On November 28, 2022, we denied the defendant's motion to vacate the arbitration award.[3] On May 18, 2023, we granted a motion by the plaintiff to confirm the arbitration award, and judgment in the amount of $725,000 was entered against the defendant, Fernandez.

Notwithstanding the arbitration award and entry of judgment, the parties continued to participate in motion practice with respect to enforcement of the judgment, and they continued to discuss settlement. On July 6, 2023, the parties engaged in another settlement conference before the undersigned United States magistrate judge, and they once again agreed to a settlement. On July 7, 2023, we entered an order in accordance with the terms of the parties' settlement agreement. Doc. 218. This settlement order involved two separate parts:

First, Fernandez agreed to pay Soler $750,000 by August 7, 2023,

---

[3] *See generally Soler v. Fernandez*, No. 11-cv-01232, 2022 WL 17252586 (M.D. Pa. Nov. 28, 2022), Doc. 192.

in exchange for Soler's transfer of his ownership interest in the three jointly owned companies and in exchange for his resignation from any role in those businesses. The parties further expressly agreed that the time for performance of these obligations was an essential term of the settlement agreement, and if Fernandez failed to make the required payment of $750,000 on or before August 7, 2023, the court would enter an amended judgment in favor of Soler and against Fernandez in the amount of $875,000.[4]

Second, Fernandez agreed to pay or otherwise settle ten separate tax liens owed to the federal and state governments by the three companies, including more than $565,000 in unpaid taxes, on or before October 6, 2023. These tax liens were apparently recorded against both

---

[4] The settlement agreement and order expressly provided that "time is of the essence" in the parties' settlement agreement, and specifically with reference to Fernandez's payment obligations. *See* Settlement Order ¶¶ 3, 4 (second note), 8. "'Time is of the essence' clauses are enforced in Pennsylvania." *RCN Corp. v. Paramount Pavillion Grp. LLC*, No. 03-CV-1706, 2004 WL 627057, at *9 (E.D. Pa. Mar. 10, 2004) (citing *Empire Props., Inc. v. Equireal, Inc.*, 674 A.2d 297, 303 (Pa. Super. Ct. 1996)); *see also Fleming v. Hecker*, No. 04-CV-02157, 2004 WL 2850084, at *1 (E.D. Pa. Dec. 9, 2004) ("[A] breach of a 'time is of the essence' clause in a settlement agreement may be construed as a material breach."). *See generally In re Zerodec Mega Corp.*, 54 B.R. 814, 817 n.3 (Bankr. E.D. Pa. 1985) (discussing the meaning of time being of the essence in a contract).

the companies themselves and Soler as a member of the limited liability companies.[5] The parties further expressly agreed that the time of performance of these obligations was an essential term of the settlement agreement, and if Fernandez failed to pay or otherwise settle these tax debts *in full* on or before October 6, 2023, the court would enter an amended judgment in favor of Soler and against Fernandez in the amount of $600,000 minus the amount of any tax liens paid or otherwise settled on or before that date, plus post-judgment interest.[6]

The parties eventually advised the court that the first part of the settlement agreement had been consummated: Fernandez paid Soler $750,000 and Soler transferred to Fernandez his ownership interest in the three companies, and Soler resigned from membership in them.

On October, 13, 2023, in accordance with the settlement agreement and order, plaintiff's counsel advised the court that, as of that date, Fernandez had failed to demonstrate the settlement of *any* of the tax obligations listed in the settlement agreement and order. Plaintiff's

---

[5] Over an extended period, the tax liens apparently prevented Soler from obtaining credit on reasonable terms and from pursuing various business opportunities unrelated to the joint venture at issue here.

[6] *See supra* note 4.

counsel requested that a money judgment of $600,000 be entered as provided in the settlement agreement and order. Doc. 225.

On October 25, 2023, in accordance with the settlement agreement and our order of July 7, 2023, we directed the clerk to enter judgment in favor of Soler and against Fernandez in the amount of $600,000 plus post-judgment interest. Doc. 227. Later that same day, the clerk entered judgment as directed. Doc. 228. Fernandez did not file an appeal.

On December 5, 2023, the plaintiff filed a praecipe to issue writ of execution, which was contemporaneously served on the defendant by notice of electronic filing. Doc. 232.[7] On December 7, 2023, the clerk issued the requested writ of execution. Doc. 234.

Now before the court is the defendant's Rule 60(b) motion to amend judgment. Doc. 237. The motion is fully briefed and ripe for decision. *See* Def.'s Br. in Supp., Doc. 238; Pl.'s Br. in Opp'n, Doc. 242.

Citing Rule 60(b)(5) and (6) of the Federal Rules of Civil Procedure, Fernandez requests that the court amend and reduce the $600,000

---

[7] Immediately after the praecipe for a writ of execution, a second copy of the very same document was electronically filed and contemporaneously served under an "application for writ of garnishment" label. Doc. 233.

judgment to reflect certain tax payments he purportedly made in December 2023, two months *after* the bargained-for deadline imposed by the settlement agreement and order, and after judgment was entered.[8] He argues that these belated payments to taxing authorities constitute "changed circumstances" justifying relief from the judgment entered

---

[8] The defendant has submitted as exhibits to his motion copies of two email messages from the state department of revenue acknowledging receipt of two payments of $13,702.58 and $238,289.74 on December 5, 2023, and a photocopy of an attorney trust account check dated December 7, 2023, and made out to the U.S. Treasury in the amount of $250,000. Handwritten notations suggest that these three payments reflect lien payoffs for "Heritage Fresh Food," "Heritage Food of Hazleton," and Heritage Food of Hazleton," respectively. This documentation does not indicate to which—if any—of the ten specifically identified liens these payments are related, nor that these payments fully satisfied *any* of these liens. In his brief in opposition, Soler represents that the first payment annotated "Heritage Fresh Food" is entirely unrelated to the tax liens filed against him personally, which were expressly identified in the settlement agreement and order. Soler further notes that Fernandez made these payments only after receiving notice that a writ of execution had been requested and issued. *See* Praecipe for Writ of Execution, Doc. 232; Writ of Execution, Doc. 234. We note that the praecipe was electronically filed and served by the plaintiff at 12:51 a.m. on December 5, 2023, and the writ of execution was electronically filed and served by the clerk at 1:11 p.m. on December 7, 2023. **We further note that, to the extent the attorney trust account check was issued *after* defense counsel received notice of the writ of execution, this was in contravention of the terms of the writ of execution, which expressly garnished the defendant's property held in the attorney's trust account and enjoined counsel as garnishee from using the garnished funds to pay such debts.** *See* Writ of Execution ¶ 2.

- 7 -

against him. He argues that, because the "spirit and intent" of the settlement agreement was for him to satisfy certain tax obligations,[9] payment of the full $600,000 judgment would be a "windfall" to Soler and result in manifest injustice.

Rule 60(b)(5) "provides that a party may file a motion for relief from a final judgment if: (1) the judgment has been satisfied, released or discharged; (2) a prior judgment upon which it is based has been reversed or otherwise vacated; or (3) it is no longer equitable that the judgment should have prospective application." *Norman v. Elkin*, 849 F. Supp. 2d 418, 423 (D. Del. 2012) (citing Fed. R. Civ. P. 60(b)(5)). The basis for the defendant's reliance on Rule 60(b)(5) is poorly articulated, but it is clear from the record that the judgment imposed has not been satisfied, released, or discharged, and the judgment imposed here was not based upon any prior judgment. Thus, the defendant appears to suggest that

---

[9] While satisfaction of tax obligations was indeed *an* aim of the settlement agreement, we note that the "spirit and intent" of the settlement agreement was also that performance of this obligation be completed *on or before October 6, 2023*, that time was of the essence with respect to performance of this obligation, and that judgment representing $600,000 in liquidated damages, less the value of any tax liens actually satisfied within the requisite period, would be entered if not timely accomplished.

prospective application of the judgment would no longer be equitable due to changed circumstances. But this final clause of Rule 60(b)(5) "incorporates the time-honored rule that a court of equity may modify an injunction in adaptation to changed conditions." *Marshall v. Bd. of Educ.*, 575 F.2d 417, 425 (3d Cir. 1978) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)) (brackets and internal quotation marks omitted); *see also In re Master Key Antitrust Litig.*, 76 F.R.D. 460, 463 (D. Conn. 1977) ("[The third clause of Rule 60(b)(5)] embodies the traditional power of a court of equity to alter an injunctive decree to adapt to new or unforeseen conditions."). This clause "empowers a court to modify a judgment only if it is 'prospective,' or executory." *Marshall*, 575 F.2d at 425. But the money judgment entered in this case is a judgment at law for damages—a present remedy for a past wrong, not a prospective injunctive remedy.[10] *See id.* (affirming denial of Rule 60(b)(5) motion with respect to judgment at law for damages); *Ryan v. U.S. Lines Co.*, 303 F.2d 430, 434 (2d Cir. 1962) ("Rule 60(b)(5) . . . does not cover the case of a

---

[10] To be clear, the past wrong addressed by this award of damages is a failure to discharge the tax liens prior to October 6, 2023. The specified amount of $600,000—subject to setoffs that did not occur in this case—is essentially a liquidated damages clause.

judgment for money damages."); *see also Nat'l City Golf Fin. v. Scott*, 899 F.3d 412, 419 (5th Cir. 2018) ("A judgment operates prospectively if it requires a court to supervise changing conduct or conditions that are provisional or tentative. An ordinary money judgment is not prospective because it offers a present remedy for a past wrong.") (citations and internal quotation marks omitted); *Norman*, 849 F. Supp. 2d at 423–24 ("[A] jury's verdict on damages is not prospective; rather, it constitutes a present remedy for a past wrong."). Thus, the defendant is not eligible for relief under Rule 60(b)(5).

Alternatively, the defendant seeks relief from judgment under Rule 60(b)(6), the catch-all provision of Rule 60.[11] "Although the text of Rule 60(b)(6) states simply that a court may grant relief from a final judgment for 'any other reason that justifies relief,' courts have added a requirement that a party seeking Rule 60(b)(6) relief must demonstrate the existence of 'extraordinary circumstances' that justify reopening the judgment." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008);

---

[11] We note that relief under Rule 60(b)(6) is mutually exclusive to the rule's other clauses. *See Stradley v. Cortez*, 518 F.2d 488, 493 (3d Cir. 1975) ("Rule 60(b)(6) is available . . . only when the relief sought is based upon 'any other reason' than a reason which would warrant relief under 60(b)(1–5)."); *accord Scott*, 899 F.3d at 419.

*see also Moolenaar v. Gov't of Virgin Islands*, 822 F.2d 1342, 1346 (3d Cir. 1987) ("Rule 60(b) does not confer upon the district courts a *standardless* residual of discretionary power to set aside judgments.") (internal quotation marks omitted).

"[A] showing of extraordinary circumstances involves a showing that without relief from the judgment, an extreme and unexpected hardship will result." *Budget Blinds*, 536 F.3d at 255 (internal quotation marks omitted). The defendant points to his belated, post-judgment payment of *some* of the tax obligations as the hardship or changed circumstances upon which this motion is based. "But extraordinary circumstances rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." *Id.* Indeed, it can hardly be said that any hardship that might result from the defendant's deliberate choice to tender partial payment to state and federal tax authorities nearly two months after a money judgment was entered against him, and only after receiving notice that a writ of execution was forthcoming or had already been issued, constitutes an *unexpected* hardship. The settlement agreement and order required the defendant to resolve certain tax liens filed against the plaintiff by a fixed date—a bargained-

- 11 -

for term of the agreement—or be subject to entry of a judgment for liquidated damages—also a bargained-for term of the agreement. In addition, the settlement agreement and order included a bargained-for "time is of the essence" provision. As the Third Circuit has previously observed, "a party who is simply trying to escape the effects of a bargain it regretted in hindsight has not demonstrated exceptional circumstances sufficient to warrant reopening under Rule 60(b)(6)." *Matthews v. The Hartford Ins. Co.*, 402 Fed. App'x 686, 689 (3d Cir. 2010) (per curiam) (citing *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 273 (3d Cir. 2002)) (internal quotation marks omitted). Moreover, the defendant's post-judgment conduct is simply irrelevant to the court's entry of a money damages judgment based on the defendant's failure to perform certain obligations set forth in the settlement agreement and order by a date certain, where the settlement agreement and order expressly provided that time was of the essence with respect to this performance. *See Walsh v. Krantz*, 423 Fed. App'x 177, 180 (3d Cir. 2011) (per curiam) (finding post-judgment conduct irrelevant to court's previous determination to enter judgment). Thus, the defendant has failed to demonstrate extraordinary circumstances that would justify relief under Rule

60(b)(6).

"Litigation must come to an end at some point." *Davidson v. Dixon*, 386 F. Supp. 482, 493 (D. Del. 1974), *aff'd mem.*, 529 F.2d 511 (3d Cir. 1975). Nearly thirteen years after it commenced, this lawsuit has reached that point. The defendant's Rule 60(b) motion to amend judgment (Doc. 237) will be denied.

An appropriate order follows.


Dated: February 28, 2024         *s/Joseph F. Saporito, Jr.*
                                 JOSEPH F. SAPORITO, JR.
                                 Chief United States Magistrate Judge